UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| YVONNE TYSON, | ) | CASE NO. C11-1023-JLR-MAT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | RE: SOCIAL SECURITY DISABILITY |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | APPEAL |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Yvonne Tyson proceeds through counsel in her appeal of a decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner, after conducting hearings before an Administrative Law Judge (ALJ), issued a partially favorable decision, finding plaintiff disabled as of December 31, 1998, but declining to reopen adjudication of applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) filed in 1982. Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REMANDED for further administrative proceedings.

/ / /

REPORT AND RECOMMENDATION
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1959.[1] She completed the eleventh grade of high school, taking special education classes, and unsuccessfully pursued her GED through community college classes. (AR 99, 537-38, 555-56.) Plaintiff previously worked as a janitorial worker, hand packager, and pricer/sorter. (AR 94, 552-55.)

Plaintiff filed applications for DIB and SSI in October 1982. (*See* AR 568, 596.) The concurrent claim was denied in an initial determination dated January 14, 1983. (AR 104-104A, 568, 596.) No further activity occurred in relation to the claim and the files were destroyed. (AR 104-104A.)

Plaintiff again submitted applications for DIB and SSI in December 2003, alleging disability beginning April 1, 1981. (*See* AR 35, 76.)[2] These applications were denied initially and on reconsideration, and plaintiff timely requested a hearing.

ALJ Ruperta Alexis appears to have conducted a hearing scheduled to occur on October 4, 2006. (*See* AR 54, 157.) Transcripts of later hearings reflect that the ALJ took plaintiff's testimony at the 2006 hearing. (AR 524-25, 531.) However, the record does not contain a copy of a 2006 hearing transcript.

At some point following the hearing, plaintiff was referred for a psychological evaluation with Dr. Richard Washburn. (AR 504.) Dr. Washburn, in a December 21, 2006 evaluation and January 4, 2007 Medical Source Statement, opined as to, *inter alia*, plaintiff's

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

[2] Plaintiff's SSI application was not available for inclusion in the record. (AR 4.)

low to borderline cognitive functioning, and her marked and extreme limitations in work-related abilities. (AR 495-509.) After receiving these documents, plaintiff's counsel indicated the intention to amend plaintiff's disability onset date to December 31, 1998 "to simplify the issues in [the] case[,]" and requested a supplemental hearing if a fully favorable decision could not be issued based on Dr. Washburn's reports. (AR 161-64.)

The ALJ attempted to hold another hearing on August 14, 2007, at which plaintiff failed to appear. (AR 521-28.) She then conducted another hearing, on August 20, 2007, taking testimony from plaintiff and a vocational expert. (AR 529-62.) ALJ Alexis issued a partially favorable decision on August 30, 2007, finding plaintiff disabled as of August 22, 2003, but not prior to that date. (AR 35-43.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review and plaintiff appealed that final decision of the Commissioner to this Court. The parties, in March 2010, stipulated to a remand for further administrative proceedings and a new determination as to plaintiff's disability prior to August 22, 2003. (AR 606-10.) In a May 15, 2010 order, the Appeals Council remanded the case to the ALJ, reflecting the issue as whether plaintiff was disabled beginning December 31, 1998 and, if so, whether she continued to be disabled through August 23, 2003. (AR 601-03.)

On June 25, 2010, plaintiff's counsel requested a reopening of plaintiff's 1982 concurrent claim, and all information related to that claim. (AR 596.) He thereafter submitted for consideration updated records, dated June 1981 through December 1997. (*See* AR 587.) The ALJ held another hearing on February 3, 2011, taking testimony from plaintiff and a medical expert. (AR 796-816.)

ALJ Alexis issued a second decision dated February 24, 2011. (AR 568-72.) She found no basis for reopening the prior adjudication of plaintiff's 1982 claim (AR 568) and, therefore, considered plaintiff's claim only as of December 31, 1998. The ALJ, at step one of the five-step sequential evaluation process for determining whether a claimant is disabled, *see* 20 C.F.R. §§ 404.1520, 416.920 (2000), found plaintiff had not engaged in substantial gainful activity (SGA) since December 31, 1998. (AR 570.) At step two, the ALJ found severe plaintiff's mental retardation, status post brain injury, blindness in the left eye, and reduced vision in the right eye. (*Id*.) At step three, the ALJ found plaintiff's impairments medically equaled the criteria of section 12.05C (Mental Retardation) of the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, Appx. 1, § 12.05, and that plaintiff had been under a disability since December 31, 1998. (AR 571.)[3]

There is nothing in the record indicating either that plaintiff appealed the ALJ's second decision to the Appeals Council or that the Appeals Council otherwise assumed jurisdiction. As such, the ALJ's decision became the final decision of the Commissioner after remand. §§ 404.984(d), 416.1484(d). (*See also* AR 564.) Plaintiff appealed to this Court the ALJ's decision denying the reopening of the 1982 claim.

## DISCUSSION

Plaintiff avers a constitutional, statutory, and regulatory basis for reopening her prior applications. She maintains her mental impairments met the requirements for disability at step

---

[3] Finding plaintiff disabled at step three, the ALJ did not proceed to step four – requiring, if a claimant's impairments do not meet or equal a listing, the Commissioner to assess residual functional capacity and determine whether the claimant has demonstrated an inability to perform past relevant work – or step five – requiring, if a claimant demonstrates an inability to perform past relevant work, the Commissioner to demonstrate that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. §§ 404.1520, 416.920.

three of the Listing of Impairments as of April 1981. Plaintiff, therefore, requests remand for an award of benefits based on her October 1982 concurrent claim.

The parties agree that, absent a colorable constitutional claim, this Court lacks subject matter jurisdiction to review the denial of plaintiff's request to reopen the 1982 claim. 42 U.S.C. § 405(g) and *Califano v. Sanders*, 430 U.S. 99, 108-09 (1977). They further agree that a showing of a protectable property interest denied without due process suffices to establish jurisdiction, and that plaintiff has a property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). They disagree, however, on the question of whether plaintiff establishes a due process violation.

Plaintiff avers that, pursuant to Ninth Circuit law, the failure to appeal a prior determination as a result of mental impairment or disability, along with the absence of counsel in those prior proceedings, sets forth a colorable constitutional claim and jurisdiction for this Court's review. *Evans v. Chater*, 110 F.3d 1480, 1483 (9th Cir. 1997) (allegation of mental impairment "together with the fact that he was not represented by counsel throughout these earlier proceedings, is sufficient to assert a colorable constitutional claim.") She also points generally to support for the conclusion that a decision not to reopen constitutes legal error if in violation of a claimant's right to due process. *See Gonzales*, 914 F.2d at 1203 (finding due process violation in failure to reopen where notice of decision insufficient). *See also Udd v. Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001) ("It is axiomatic that due process requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits may be denied.") (citing *Mathews*, 424 U.S. at 333); *Boettcher v. Secretary*

*of Health & Human Serv.*, 759 F.2d 719, 722 (9th Cir. 1985) (finding that plaintiff whose challenge was not "wholly insubstantial, immaterial, or frivolous" stated a colorable constitutional claim).

Plaintiff additionally points to support for a reopening pursuant to rulings of the Social Security Administration (SSA). In Acquiescence Ruling 92-7(9), the Commissioner addressed the Ninth Circuit's ruling in *Gonzales*, which found a due process violation where a notice of initial determination failed to explicitly state that the failure to seek reconsideration results in a final determination. *Gonzales*, 914 F.2d at 1203. In Acquiescence Ruling 92-7(9), the SSA explained that claimants in the Ninth Circuit were entitled to a new determination on the merits where they, on or before July 1, 1991, received a notice like that discussed in *Gonzales* and did not appeal, but did file a subsequent application either requesting a reopening of the prior initial determination or requesting some or all of the benefits then claimed. The SSA also, in Social Security Ruling (SSR) 95-1p, addressed notices failing to clarify that filing a new application instead of a request for administrative review could result in a loss of benefits. SSR 95-1p states that a finding of good cause for late filing will be found if a claimant received such a notice and demonstrated that, as a result of the notice, the claimant failed to timely request review, with consideration of factors such as the claimant's mental condition, educational level, and whether the claimant was represented by an attorney. Absent evidence to the contrary, the SSA "presumes that any notice of an initial or reconsideration determination denying a claim for title II disability benefits [(DIB)] is covered by this Ruling if it was dated after August 31, 1977, and prior to March 1, 1990." SSR 95-1p. *But see id*. ("In all other situations (e.g., notices in title II nondisability claims, title XVI disability notices

[(SSI)] and any notice dated prior to September 1, 1977, or after February 28, 1990), the claimant must furnish a copy of the notice covered by this Ruling, or SSA's records must show that a notice covered by this Ruling was issued to the claimant.")

Additionally, the SSA issued SSR 91-5p "to avoid the improper application of res judicata or administrative finality when the evidence establishes that a claimant lacked the mental capacity to understand the procedures for requesting review." If a claimant presents evidence that mental incapacity prevented the timely request for review of an administrative action, and the claimant had no legal representative, the SSA will determine whether good cause exists for extending the time allowed to seek review. SSR 91-5p. Mental incapacity establishing good cause will be found where the evidence shows the claimant lacked the mental capacity to understand the procedures for requesting review, with consideration of factors such as limited education and any mental or physical condition limiting "the claimant's ability to do things for him/herself." *Id*. *See also* 20 C.F.R. §§ 404.911(a)(4), 416.1411(a)(4) (good cause for missing deadline to request review includes "[w]hether you had any physical, mental, educational, or linguistic limitations . . . which prevented you from filing a timely request or from understanding or knowing about the need to file a timely request for review.") Any reasonable doubt is resolved in favor of the claimant. *Udd*, 245 F.3d at 1101.

Plaintiff argues the existence of a due process violation given that her failure to appeal the prior determination was the result of a mental impairment or disability, and the fact that she was not then represented by counsel. *Evans*, 110 F.3d at 1483. She adds that the date of the

REPORT AND RECOMMENDATION
PAGE -7

denial, in January 1983, raises the *Gonzales* issue.   Acquiescence Ruling 92-7(9); SSR 95-1p.[4] Plaintiff further argues that substantial evidence clearly indicates her mental impairments should excuse her failure to timely seek review of the denial of her prior claim pursuant to SSR 91-5p, and that the record establishes her disability as of April 1981 at step three of the sequential evaluation under Listing 12.05(c).

Mental Retardation, under Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpt. P, Appx. 1, § 12.05.  Subpart C of the listing requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]"   *Id*. at § 12.05(c).

Plaintiff describes medical evidence, lay evidence, and evidence of her education and work history supporting a step three finding in this case.   (*See* Dkt. 23 at 8-13.)   For instance, Dr. Washburn and Dr. Karen Anderson both assessed IQ scores satisfying the criteria for Listing 12.05(c).   (AR 497 (Dr. Washburn assessed IQ scores of 72 (verbal), 69 (performance), and 68 (full scale); AR 512 (Dr. Anderson assessed IQ scores of 70 (verbal), 78 (performance), and 72 (full scale)).   *See* 20 C.F.R. Part. 404, Subpt. P, App. 1, § 12.00(D)(6)(c) ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal,

---

[4] Plaintiff notes that, while the ALJ referred to her 1982 claim as one for SSI benefits alone (AR 568), there is no dispute that she had filed concurrent applications at that time (AR 104-104A). *See* SSR 95-1p (noting presumption that any notice in a DIB claim dated after August 31, 1977 and prior to March 1, 1990 was covered by the ruling).

REPORT AND RECOMMENDATION
PAGE -8

performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.") Moreover, Dr. W. Scott Mabee opined that it was "likely any learning difficulties were present before [plaintiff's] 1981 [car] accident[]" (AR 783), while medical expert Dr. Maxine Hoggan testified that she could infer, from plaintiff's special education classes in grade school and high school, an onset date for Listing 12.05(c) going back to 1981 and preceding the car accident in April of that year (AR 805-09) (adding that plaintiff's April 1981 car accident added "visual difficulty and so on" to plaintiff's problems)). Dr. Hoggan also agreed, upon questioning by plaintiff's counsel, that IQ scores, as a general matter, remain stable over time. (AR 809.) Plaintiff maintains that, considering all of the evidence in the record, this case should be remanded for a calculation of benefits.

The Commissioner failed to respond to plaintiff's arguments that the above-described case law and SSA rulings warrant the reopening of the 1982 claim. Instead, the Commissioner argued that plaintiff, in the August 20, 2007 hearing, knowingly waived her contention of disability from April 1981 onward by agreeing to amend her onset date to December 31, 1998. (*See* AR 531-33.) The Commissioner also maintained plaintiff's earning records during years prior to 1998 establish she could not have been disabled during that earlier time period.

The parties submitted supplemental briefing after the Court advised the Commissioner that his arguments were neither responsive, nor persuasive. The Commissioner again failed to respond to plaintiff's SSR 91-5p argument. Pursuant to 95-1p, the Commissioner presumes plaintiff received a notice with the same defect as at issue in *Gonzales* and acknowledges that plaintiff filed a subsequent application for benefits. However, the Commissioner maintains plaintiff failed to satisfy the additional requirement of Acquiescence Ruling 92-7(9) that a

claimant request either reopening of the prior initial determination or some or all of the benefits earlier claimed. That is, the Commissioner again asserts plaintiff expressly disclaimed her alleged earlier onset date of disability in the August 20, 2007 hearing. The Commissioner further avers that the ALJ, in that hearing, offered to consider evidence relating to a potential reopening, thereby affording plaintiff due process and remedying any defect in the earlier notice. *Cf. Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) (rejecting contention ALJ erred in failing to reopen prior application pursuant to *Gonzales* where ALJ "fully considered the period covered by the first application.") The Commissioner, as such, maintains an absence of jurisdiction to consider plaintiff's claim. He further argues that, even if considered, an award of benefits may not issue because the evidence plaintiff engaged in SGA prior to 1998 demonstrates she was not actually disabled.

As argued by plaintiff, the Commissioner's jurisdictional argument fails. The discussion in the 2007 hearing relied on by the Commissioner reads in full:

> ALJ: . . . And following receipt of the consultative examination from Karen Anderson, I received a letter, Counsel, from you indicating that you wanted to go back to the Claimant's early 19, when the claimant applied for benefits she gave an [alleged onset date] of 4/1/81 and she had a [date last insured] of 3/31/01. And then she had some subsequent apps and a subsequent application in between. And when I received your letter, which is entered into the record as 16E, you reported that you wanted to go back to the earlier onset. I think at the hearing we talked about a later onset and I didn't review all of my records, all of my notes from the hearing. But it was understanding that we had talked about a later onset and then we got Dr. Anderson and Dr. Washburn's report. And so then you requested to go back to the earlier onset of December 31, 1998. I did not think there was sufficient evidence to go back to the '98 onset –
>
> ATTY: Uh-huh.
>
> ALJ: – and so per your request, we would, if I could not issue a fully favorable which I could not under December '98, that you wanted to have a supplemental

01  hearing. So here we are.

02  ATTY: That's correct, Your Honor.

03  ALJ: Okay.

04  ATTY: But, I guess, the issue for me is the date last insured. My understanding was it was '99, but maybe –

05  ALJ: According to our records, the date last insured was 3/31/2000 and that's our, our insured status report of August 8, 2006 showed –

07  ATTY: Oh, okay.

08  ALJ: – a date last insured of 3/31/2000. So with the, the later onset of 12/15/03 which was based on that last application, the protective filing date –

09  ATTY: Right.

10  ALJ: – it would effectively eliminate her Title II claim, but not the XVI.

11  ATTY: Right.

12  ALJ: And so I thought that's why you were requesting to go back to '98. But I still don't know what, what evidence we have to go back to '98.

14  ATTY: Well, for, for practical purposes, Your Honor, we had, we had indicated that 1998 date. But if her date last insured is March of 2000, we can amend the onset date to March of, March 1, 2000 in terms of disability status. Our argument is that in any event she meets the listings of impairment under 12.05 based upon the multiple examinations she's had regarding her mental status.

17  ALJ: Well, 12.05(c) as of when, because that's still the same issue. The only, the evidence that I have prior to her date last insured, what, the evidence that I have in the record is Exhibit 4F which are medical records from the University of Washington. So I guess I need you to articulate your position going back to 1998 or to the 2000 date.

20  ATTY: Sure, and our position is that even though we don't have the IQ tests taken from that time period, we do have in, submitted today records of her history of special education throughout school. And that, along with the evaluations by Dr. Anderson and Dr. Washburn, indicating her I, IQ level is in

REPORT AND RECOMMENDATION
PAGE -11

the 68, 70 range, that would qualify or at least equal the listing of 12.05(c).
(AR 531-33.)

The Commissioner presents a truncated version of this discussion and does not address the omitted transcript of the earlier hearing, as referred to by the ALJ. In any event, the 2007 discussion cannot be reasonably interpreted to support the Commissioner's position. Rather than offering to consider evidence relating to a potential reopening of plaintiff's 1982 claim, the ALJ and plaintiff's counsel clearly discussed whether the ALJ should be considering plaintiff's claims as of 1998 or a later date.

Moreover, the Commissioner's argument entirely ignores relevant events both preceding and following this discussion. As reflected above, plaintiff's 2003 applications for benefits alleged disability beginning April 1, 1981. (*See* AR 35.) Plaintiff, therefore, originally sought benefits previously claimed in her 1982 applications. After receiving favorable evidence from Dr. Washburn and in an effort to "simplify the issues in the case[,]" plaintiff amended her onset date to December 31, 1998. (AR 161-64.)

Later, in June 2010, plaintiff requested a reopening of the prior claim. (AR 596 ("We are requesting a reopening of her prior concurrent claim file, I believe, in 1982."; requesting all information related to claim file and an explanation for the denial of the claim).) While the ALJ, in the 2011 hearing, expressed doubt as to whether the 1981 date was properly at issue in the remand by the Appeals Council, counsel for plaintiff clarified that he had not had evidence of the earlier applications at the time of the remand, but had generally raised the issue. (AR

810-15.)[5]  Moreover, as then acknowledged by the ALJ (AR 812), the experts requested to appear at the 2011 hearing were to provide testimony to cover the period of "April 14, 1981 through April 23, 2003." (AR 662, 790.) Indeed, Dr. Hoggan testified she could infer an onset date for Listing 12.05(c) going back to 1981. (AR 805-09.)

The Commissioner's arguments are particularly perplexing when considered in relation to the 2011 ALJ decision. The ALJ did not purport to find the issue of benefits extending back to 1981 waived. Instead, she acknowledged the existence of the prior claim (mistakenly described as limited to SSI, rather than a concurrent claim for benefits), plaintiff's request to reopen that claim and allege disability from 1982 to 2003, and the explanation that plaintiff's counsel "had not requested reopening earlier because the 1982 application could not be located." (AR 568.) The ALJ thereafter considered and denied plaintiff's request to reopen.

Considering all of the above, the evidence does not support either the contention that plaintiff knowingly waived a claim of disability dating back to 1981 or that the Commissioner remedied any defect in the process provided. Instead, considering the evidence of mental impairment, the fact that she was not represented at the time of the 1983 denial of benefits, and the presumption that she received a *Gonzales*-like denial, plaintiff presents a colorable constitutional claim affording this Court jurisdiction over her claim. *See Evans*, 110 F.3d at 1483; *Gonzales*, 914 F.2d at 1203; Acquiescence Ruling 92-7(9); SSR 95-1p.

---

5 The transcript of the 2011 hearing appears to be incomplete. (*See* AR 798 and 810 (reflecting that the ALJ had begun questioning or commenting prior to the beginning of the transcription, and including a reference back to a question apparently previously raised by the ALJ as to the onset date, but not included in the transcript of the hearing).) Also, in addition to the omission of plaintiff's 2003 SSI application and related documents (*see* AR 4) and the 2006 hearing transcript, the record does not contain documents at AR 729 through AR 736, which are described as containing medical records and a August 24, 2010 letter to medical expert Dr. Jay Toews (*see* AR 5C.)

The Court must, therefore, apply the substantial evidence standard to the ALJ's decision denying the request to reopen plaintiff's prior concurrent claim. *Udd*, 245 F.3d at 1100 (citing *Evans*, 110 F.3d at 1483). Under that standard, this Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). For the reasons discussed below, plaintiff successfully challenges the ALJ's decision. This reasoning includes consideration of the Commissioner's additional argument as to plaintiff's work activities in the relevant time period.

In finding no basis for reopening adjudication of plaintiff's 1982 claim (AR 568), the ALJ pointed to 20 C.F.R. § 416.1488 as limiting the reopening of SSI determinations to within two years after the initial determination. § 416.1488(b). In so doing, the ALJ failed to recognize plaintiff filed a concurrent claim in 1982, or to address the subpart of § 416.1488 allowing reopening at any time if a determination is "obtained by fraud or similar fault[,]" which includes consideration of "physical, mental, educational, or linguistic limitations" a claimant may have had at the time. § 416.1488(c). The ALJ did not address Acquiescence Ruling 92-7(9), *Gonzales*, 914 F.2d at 1203, or SSR 95-1p, and provided no explanation for her conclusion that SSR 91-5p "was also considered and does not apply in this case." (AR 568.)

Also, while stating that there was "no evidence that the initial [1983] determination was in error[,]" the ALJ failed to mention that the earlier claim file no longer existed, provide an explanation as to the basis for the earlier determination, or address the opinions of Dr. Mabee and Dr. Hoggan, as well as any other evidence, related back to 1981.

The ALJ's decision declining to reopen lacks the support of substantial evidence, and plaintiff establishes good cause for the reopening of her prior claim based on evidence of her mental condition and limited education, the type of notice she is presumed to have previously received, and the fact that she was not represented at the time she received that notice. *Gonzales*, 914 F.2d at 1203; Acquiescence Ruling 92-7(9); SSR 91-5p and 95-1p. Evidence relevant to this conclusion includes the opinions of Drs. Mabee and Hoggan both currently and as they relate back to plaintiff's condition in 1981/1982 (AR 782-83, 803-10), and other recent medical opinions of plaintiff's impaired mental condition (*see*, *e.g.*, AR 512-16 (reflecting Dr. Anderson's 2003 assessed IQ scores, as described above, the observation that plaintiff displayed "significant deficits in both auditory and visual memory which impact her learning and retention of information[,]" and a diagnosis of borderline intellectual functioning); AR 312 (treating physician Dr. Maria Busch, in 2003, noted "Questionable memory difficulties versus developmental delay."); AR 172 (evaluating physician Dr. Thomas Petek, in 2004, emphasized that plaintiff's overall delayed memory capabilities are in the extremely low classification range."); AR 495-509 (reflecting Dr. Washburn's 2006 assessed IQ scores and limitations, as described above, and conclusion that plaintiff "was found to function within the borderline range of overall ability with generally equivalent development of verbal and non-verbal resources.")) The evidence also includes plaintiff's special education classes and failure to

graduate or obtain a GED (AR 99, 537-38, 555-56), and consideration of the fact that her prior employers included, *inter alia*, Goodwill Industries, Local Handicapped Workers, Inc., Disadvantaged Workers of America, Washington Protection and Advocacy System, and Jobs for [the] Handicapped, Inc. (AR 94, 151-52).

However, plaintiff does not support the contention that this matter should be remanded for an award of benefits. "Ordinarily, when a due process violation requires that an application for benefits be reopened, the case is remanded to the Commissioner so that the agency can rule on the merits of the plaintiff's disability claims in the first instance." *Udd*, 245 F.3d at 1102. *See also* SSR 91-5p ("If the adjudicator determines good cause exists, he or she will extend the time for requesting review and take that action that would have been appropriate had the claimant filed a timely request for review."); SSR 95-1p (same). Here, while the record contains compelling evidence supporting the claim for benefits given Dr. Hoggan's testimony that the onset date for Listing 12.05(c) could be inferred back to 1981, it remains that the SSA has yet to review the merits of plaintiff's 1982 claim. *Cf. Udd*, 245 F.3d at 1102 (finding no need for further adjudication beyond calculation of benefits where ALJ already found claimant continuously disabled since prior disability determination date); *Crane*, 76 F.3d at 255 (no error in failure to reopen where ALJ already considered period covered by earlier application). *See also McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002) (remand for benefits appropriate where, *inter alia*, "there are no outstanding issues that must be resolved before a determination of disability can be made[]"). The ALJ should, therefore, be directed to reopen and assess plaintiff's 1982 claim for benefits.

Contrary to the Commissioner's suggestion, this Court should not render independent

REPORT AND RECOMMENDATION
PAGE -16

findings as to the merits of plaintiff's 1982 claim. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Such findings would necessarily include the step one determination of whether plaintiff engaged in SGA during the relevant time period, which would preclude a finding of disability. 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1571, 404.1520 (a)(4)(i), 416.920(a)(4)(i). The Commissioner's contention that evidence of plaintiff's earnings during the period prior to 1998 precludes a disability finding is an inappropriate post hoc rationalization, relying on grounds never considered by the ALJ. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) (the Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (the Court "'cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.'") (citing *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947))).

It should further be noted that, even if properly considered by this Court, the evidence of record is insufficient to reach a determination as to SGA prior to 1998. The Commissioner points to earnings records in the years 1989, 1990, and 1997 as demonstrating plaintiff earned more than the presumptive threshold for SGA. (Dkt. 27 at 5 and Dkt. 30 at 4.) *See* 20 C.F.R. §§ 404.1574(b), 416.974(b) (setting forth average earnings levels at which work is considered SGA). However, as plaintiff observes, earnings are a presumptive, not a conclusive sign of whether a job constitutes SGA. *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001). Plaintiff may rebut the presumption by producing evidence she did not engage in SGA. *Id.* (noting relevant factors pursuant to the regulations, including "the nature of the claimant's work, how

REPORT AND RECOMMENDATION
PAGE -17

well the claimant does the work, if the work is done under special conditions, if the claimant is selfemployed [sic], and the amount of time the claimant spends at work.") (citing 20 C.F.R. §§ 404.1573, 416.973).

Plaintiff notes a variety of factors relevant to the step one determination in this case, pointing to evidence that she required state Supported Employment services to work (AR 653-57), and suggesting the possibility that she was employed in a sheltered or special work environment, 20 C.F.R. §§ 404.1574(a)(3), 416.974(a)(3) ("If you are working in a sheltered workshop, you may or may not be earning the amounts you are being paid."). Other relevant factors may include consideration of whether plaintiff engaged in unsuccessful work attempts, §§ 404.1574(c), 416.974(c), trial work periods, § 404.1592(a), and/or reentitlement periods, § 404.1592a. (*See*, *e.g.*, AR 809-10 (Dr. Hoggan, when asked how plaintiff could have accomplished work activities before and after the car accident, testified: "I did not hear that she had any long term employment, which would say to me I suspect she's able to present well enough to acquire a job. She cannot actually function in the, the requirements of the job after she gets it and, therefore, she has short term employment.")) Plaintiff's blindness in one eye and reduced vision in her other eye (AR 570) may also implicate the step one analysis. § 404.1584 (evaluation of work activity of blind people).[6]

In sum, this Court has jurisdiction to consider the decision denying the reopening of plaintiff's claim, and the ALJ's decision denying a reopening lacks the support of substantial

---

6 The Commissioner also, as noted by plaintiff, raises a problematic argument in relation to plaintiff's past earnings in stating that, "[b]ecause mental retardation does not wax and wane, it follows that [plaintiff] was not disabled due to mental retardation prior to 1989." (Dkt. 30 at 4.) Given that the ALJ, in 2011, found plaintiff disabled due to her mental retardation, the concession that that condition does not wax and wane argues in favor of an award of benefits for the earlier time period.

evidence. Accordingly, this matter should be remanded for consideration of plaintiff's 1982 claim for benefits.

## **CONCLUSION**

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings.

DATED this 11th day of June, 2012.

Mary Alice Theiler
United States Magistrate Judge